Argued May 25, affirmed June 14, 1976

WOOD, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 91944, CA 5942)
550 P2d 756

*Richard T. Kropp,* Albany, argued the cause for appellant. On the brief were Emmons, Kyle, Kropp & Kryger and J. David Kryger, Albany.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

## LANGTRY, J.

Claimant appeals from a circuit court order which affirmed a Workmen's Compensation Board order allowing 80 degrees for its determination of a 25 percent permanent partial unscheduled disability. Claimant had suffered injury to his back in 1971 when he misstepped on a walk in connection with his work as a mobile home salesman and sought a determination of permanent total disability. The referee previous to the Board and circuit court reviews had allowed 160 degrees for his determination of 50 percent disability.

The early treatment of the disability is described in the referee's opinion.

"* * * * *

"In April 1972 claimant was seen by Donald J. Paluska, M.D., an orthopedic surgeon. Dr. Paluska commented:

" 'X-rays of the lumbar spine show some sclerosis of the vertebral body of S1, posteriorly. There is an increased angulation at the L5, S1 junction with the sacrum angulating posteriorly.'

Dr. Paluska's impression was, 'Degenerative osteoarthritis of the lumbosacral joint with chronic lumbosacral strain aggravated by exogenous obesity and tight hamstring muscles.' He recommended weight reduction and exercises for stretching the hamstrings. He felt that if conservative measures were not effective a diagnostic myelogram and possible spinal fusion should be considered (Joint Exhibit 7).

"Claimant came under the care of C. W. Davis, D.C., a Klamath Falls chiropractic physician, on August 14, 1972 and received continuing chiropractic adjustments and physiotherapy from Dr. Davis over a period of a number of months. Dr. Davis testified at the hearing that when he last treated claimant in June 1973 he was not able to return to his regular work as a mobile home salesman because he was unable to do the amount of walking, stair climbing and standing, incident to this employment on a full time basis. The report was sent to the State Accident Insurance Fund by Dr. Davis in June 1973 indicating that claimant was not then released for

work (Joint Exhibit 25). Beginning some six months prior to June 1973 and up to April 1974, claimant was engaged in a business enterprise with Dr. Davis to operate a mobile home sales lot. Dr. Davis testified that he did not construe claimant as able to return to his regular work in June even though he was engaged in the mobile home sales business because of the contrast in the nature of the work he was doing in this enterprise with the kind of activity required of a fully employed mobile home salesman.

"* * * * *."

Subsequently, claimant was seen by numerous additional physicians, and a myelogram, or possible spinal fusion, has been proposed, which claimant has refused. The referee noted, and the record bears out that:

"* * * He indicated a desire to go into some type of light sales work or self-employment but the record does not show strong motivation to test the limits of his physical capacity; the record reflects that he has made no attempt to gain employment and has made no approach to the Vocational Rehabilitation Division. He testified that he went once to the office of the Vocational Rehabilitation Division but left because he would have had to wait for an interview * * *."

The record shows that claimant has been considered retrainable, but does not cooperate in this regard.

Claimant had gone into a joint trailer sales business with Dr. Davis in January 1973 in which he was doing a substantial part of the work with the aid of his wife, but for the first few months was filing routine reports with SAIF that he was not working. This joint business continued until April 1974. Claimant has not worked at an occupation since then. He describes his condition now as about the same as it was in 1973-74.

Several witnesses testified about their experiences with claimant in connection with trailer sales in 1973 and 1974. He mentioned to some of them that he had a bad back, yet, he did much of the necessary work— even to the point of doing things like moving a

refrigerator. Typical of this testimony is that of a Mr. Avon Cummins:

"Q. Did you see Mr. Wood on the lot during any of those visits?

"A. Yes, we did.

"Q. What did he appear to be doing there.

"A. Well, at the time when we visited he was in his office, and then he took us around and showed us various trailers that he had for sale.

"Q. Was his wife there?

"A. No, not at that time she wasn't.

"Q. Did Mr. Wood take you in the trailers and show them to you?

"A. Yes, he did.

"* * * * *

"Q. When he was showing you around the mobile homes did he appear to have any disabilities that you could see?

"A. Well, I didn't really pay too much attention. We was just looking for a mobile home, and I never really took too much concern about the man's condition."

Credibility is an issue in this case. We give weight to the referee's credibility findings because he saw and heard the witnesses, but we are not bound by them. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). On account of his age (now 53), education and experience claimant's opportunities for gainful work are limited. Yet, the record convinces us that claimant can do at least light sales work—which he did do in 1973-74—and we are also convinced that claimant has simply refused to try doing what he can do. Under these circumstances, we are satisfied that the Board's and circuit judge's level of award was correct.

Affirmed.